**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 18-3440

———————————

M.G. AND D.G. ON BEHALF OF M.G.,
                                          Appellants

v.

NORTH HUNTERDON-VOORHEES REGIONAL HIGH
SCHOOL DISTRICT BOARD OF EDUCATION

———————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:17-cv-12018)
District Judge: Hon. Peter G. Sheridan

———————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 4, 2019

Before: JORDAN, BIBAS, and MATEY, *Circuit Judges*.

(Filed:  June 20, 2019)

———————————

OPINION*

———————————

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

This matter presents a challenge to the terms of Individualized Educational Plans ("IEP") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401. Appellants, the parents of M.G., appeal the District Court's order denying their motion for summary judgment and granting North Hunterdon–Voorhees Regional High School District Board of Education's ("District") motion for summary judgment. Finding no error in the District Court's conclusions, we will affirm.

I.

We begin by summarizing the facts. Since 2015, the District has provided M.G. services under an IEP. The District serves students from multiple municipalities in Hunterdon County, New Jersey, including the municipality where M.G. resides. Through M.G.'s first year of high school, a program suited to her needs was unavailable within the district. Instead, M.G. attended the Developmental Learning Center ("DLC") in Warren, New Jersey. In February 2016, the District issued a new IEP ("2016 IEP") requiring M.G. to attend a program in the District beginning with the 2016–17 school year. M.G.'s parents objected to the 2016 IEP and challenged the proposal ("2016 IEP Petition") with the New Jersey Department of Education (the "Department").

Under the IDEA, that challenge stayed the proposed transfer so M.G. remained enrolled at the DLC for the 2016–17 school year. In April 2017, while the 2016 IEP Petition was pending, the District issued a revised IEP ("2017 IEP") and again directed M.G. to attend a program in the District. M.G.'s parents filed a second challenge ("2017

IEP Petition") with the Department. As a result of this new petition, M.G. continued to attend DLC during the 2017–18 school year.

The Department transferred both the 2016 IEP Petition and 2017 IEP Petition to the Office of Administrative Law. An Administrative Law Judge ("ALJ") consolidated the petitions and conducted a three-day hearing in August 2017. As the hearing took place after the 2016–17 school year, the ALJ found the objections to the 2016 IEP moot and reviewed only the 2017 IEP. The ALJ heard testimony from several witnesses, including multiple experts on behalf of both parties. The District's witnesses included a school psychologist; a clinical psychologist and behavior specialist; and the Director of Special Education for the District. Appellants presented the testimony of M.G.'s father, as well as expert testimony from a clinical psychologist.

Following the hearing, the ALJ dismissed both petitions and concluded that the 2017 IEP provided M.G. with "significant learning and meaningful educational benefit[s] in light of M.G.'s individual needs and potential." (App. 245.) M.G.'s parents appealed the ALJ's determination in federal court under 20 U.S.C. § 1415(i)(2)(A), and the District Court granted summary judgment for the District. M.G.'s parents timely appealed.

II.

A.  Jurisdiction and Standard of Review

Our analysis begins with an outline of the scope of our review. We have jurisdiction to review the final order of the District Court under 28 U.S.C. § 1291. Under the IDEA, "[w]e review a district court's findings of fact for clear error, but we exercise plenary review over the legal standards that the district court applies and over its legal

3

conclusions." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (citing *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 242 (3d Cir. 2009)). "A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is left with a definite and firm conviction that a mistake has been committed." *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quoting *Oberti v. Bd. of Educ. of the Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1220 (3d Cir. 1993)).

B. Appellant's Arguments

M.G.'s parents raise three arguments on appeal. First, they contend that the District Court applied the incorrect standard of review. Second, they argue that the ALJ failed to give appropriate weight to the testimony of M.G.'s father. Finally, they assert that the District Court and the ALJ erred by ignoring testimony and evidence relating to the February 2016 IEP. We address each argument in turn.

1. The IDEA Standard of Review

We begin with the standard of review. When reviewing a decision of a state administrative agency under the IDEA, district courts apply a "modified de novo" review. *D.S.*, 602 F.3d at 564. "Under this standard, a district court must give 'due weight' and deference to the findings in the administrative proceedings." *Id*. (citations omitted). The factual findings of the administrative proceeding "are to be considered prima facie correct," a standard that "prevents district courts from imposing their own view[s] of preferable educational methods on the states." *Id*. If neither party presents additional evidence, the district court bases its decision on the evidence developed in the administrative proceeding. 20 U.S.C. § 1415(i)(2)(C). The party challenging an

4

administrative decision bears the burden of persuasion and "faces the additional hurdle of overcoming a presumption that the Hearing Officer's findings were correct." *Andrew M. v. Del. Cty. Office of Mental Health & Retardation*, 490 F.3d 337, 345 (3d Cir. 2007).

Here, M.G.'s parents contend the District Court erred by straying from these principles and incorporating the standard for summary judgment under the Federal Rules of Civil Procedure. While the District Court restated the standard for summary judgment in reviewing the parties' motions, the Court also recognized that "[t]he standard of review applied in an appeal of an administrative decision under the IDEA differs from the ordinary summary judgment standard." (App. at 6.) And the District Court made clear that it was "[a]pplying the modified de novo review" in finding that M.G.'s parents had not overcome the deference given to the ALJ's factual findings. (*Id.* at 11.) This is the standard the IDEA requires, and we find no error in the District Court's conclusion.

### 2. Parental Testimony

We turn next to the testimony of M.G.'s father. Although the District Court applies a modified de novo standard when reviewing the decision of an ALJ in an IDEA case, "when, as here, an ALJ has heard live testimony and determined that one witness is more credible than another witness, [the ALJ's] determination is due special weight." *D.S.*, 602 F.3d at 564 (citing *Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 199). "Specifically, this means that a District Court must accept the state agency's credibility determinations unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." *Id.* (quoting *Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 199) (emphasis in original) (internal quotations and citations omitted). The District Court is

"not at liberty to credit the witnesses who expressed a contrary opinion without a showing that there was a good reason to do so[.]" *Id*. at 568. Rather, "the applicable standard of review [is] essentially the same as that a federal appellate court applies when reviewing a trial court's findings of fact." *Id.* at 564 (citing *Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 199).

While M.G.'s parents argue that the ALJ failed to give appropriate weight to the testimony of M.G.'s father, they did not present any new evidence to the District Court and relied instead on the record from the administrative hearing. The District Court's review of witnesses, and the weight to accord their testimony, was thus limited to the administrative record. The record reveals no non-testimonial extrinsic evidence that clearly shows that the ALJ was mistaken, so the District Court appropriately deferred to the ALJ's credibility determinations. And the ALJ gave due attention to the concerns M.G.'s father raised about M.G.'s safety and her potential for elopement. Relying on the testimony of the school psychologist, the ALJ determined that the risk of elopement was suitably addressed by the one-to-one aid outlined in the 2017 IEP. There was no error in the District Court's deference to the ALJ's findings.

3. The 2016 IEP

Finally, M.G.'s parents argue the District Court erred by affirming the ALJ's decision to focus the hearing on the 2017 IEP and to ignore testimony and evidence relating to the development of the 2016 IEP. The 2016 IEP proposed transitioning M.G. for the 2016–2017 school year; the 2016 IEP Petition opposed that plan and requested the sole remedy of "maintain[ing] the current appropriate placement at DLC Warren." (App.

6

at 316.) By the time the hearing began in August 2017, M.G. had finished the 2016–2017 school year at DLC. Since M.G. received the relief requested, the petition was moot, and it was appropriate for the ALJ to focus on the 2017 IEP Petition. *See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (alteration in original) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

III.

For these reasons, we will affirm the District Court's decision.